**[J-21-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 19 WAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered February 9, 2021, at No. |
| | : | 938 WDA 2019, affirming in part and |
| v. | : | vacating in part the Judgment of |
| | : | Sentence of the Court of Common Pleas |
| | : | of Allegheny County entered June 5, |
| DEMETRIUS CARLOS COLEMAN, | : | 2019, at No. CP-02-CR-0004460-2017, |
| | : | and remanding. |
| Appellant | : | |
| | : | ARGUED:  April 12, 2022 |
| | : | |

**OPINION**

**JUSTICE BROBSON**                                    **DECIDED: NOVEMBER 23, 2022**

In this discretionary matter, Demetrius Carlos Coleman (Appellant) appeals from an order of the Superior Court, which vacated Appellant's judgment of sentence and remanded the matter to the Court of Common Pleas of Allegheny County (sentencing court) for resentencing.  The Superior Court concluded that the sentencing court erred in failing to sentence Appellant pursuant to the mandatory sentencing enhancement set forth in Section 9715(a) of the Sentencing Code, 42 Pa. C.S. § 9715(a), requiring that any person convicted of third-degree murder "in this Commonwealth who has previously been convicted at any time of murder . . . be sentenced to life imprisonment."  We must decide whether the Superior Court was correct in concluding that the mandatory sentencing enhancement applies to a defendant such as Appellant, who killed three people simultaneously and was thereafter convicted of three counts of third-degree murder.

Upon careful review, we conclude that the sentencing enhancement does apply in such a scenario. Accordingly, we affirm.

## I. BACKGROUND

In the afternoon of November 24, 2016, East McKeesport Police Officer Scott Lowden (Officer Lowden) was on patrol when he observed the driver of a white Hyundai make an illegal left turn. Officer Lowden followed the Hyundai as it proceeded into a gas station and stopped at a gas pump. Officer Lowden exited his patrol vehicle and approached the Hyundai, where he found Appellant in the driver's seat and Asia Camp (Camp), the owner of the vehicle, in the passenger seat. Officer Lowden explained to Appellant that Appellant had made an illegal left turn and asked Appellant to provide his driver's license, insurance information, and vehicle registration. Appellant advised Officer Lowden that he could not produce his driver's license because it was suspended. Camp was also unable to produce a driver's license.

Officer Lowden returned to his patrol vehicle, where he confirmed that Appellant's driver's license was suspended and learned that Appellant had an outstanding warrant for his arrest. Officer Lowden then called the North Versailles Police Department for backup. When two North Versailles police cars arrived, Appellant fled in the vehicle, driving over the curb and sidewalk. A high-speed chase ensued, with Appellant heading toward an intersection at speeds approaching 100 miles per hour. Appellant weaved in and out of traffic without slowing or stopping, travelled in the opposite lane of traffic at times, and sped past a stopped police vehicle. Appellant eventually crashed the Hyundai into two vehicles at the intersection. One of the vehicles was a Ford Fusion sedan containing David Bianco (Bianco), Kaylie Meininger (Meininger), and their two-year-old daughter (Child). The force of the impact knocked the Ford Fusion into the air, causing it

to collide with a utility pole and almost immediately thereafter explode into flames, killing all three occupants of the Ford Fusion instantly.

Based on the foregoing, the Commonwealth of Pennsylvania (Commonwealth) charged Appellant with, *inter alia*, three counts of third-degree murder. The Commonwealth charged Appellant with these offenses in the same Criminal Information, with Counts 1, 2, and 3 relating to the deaths of Bianco, Meininger, and Child, respectively. The matter proceeded to a jury trial, following which the jury convicted Appellant of all three murder offenses and several others. The Commonwealth then filed a notice of intent to proceed under Section 9715(a) of the Sentencing Code. The Commonwealth specifically took the position that the mandatory sentencing enhancement applied to Appellant for the murders of Meininger and Child at Counts 2 and 3 of the Criminal Information because, at the time of his sentencing on those counts, he would have a prior conviction for murder at Count 1 of the Criminal Information relating to Bianco. Appellant opposed the application of Section 9715 at sentencing. The sentencing court ultimately sentenced Appellant to an aggregate term of 70 to 140 years of incarceration. Pertinently, the sentencing court declined to apply the sentencing enhancement and instead imposed consecutive terms of 20 to 40 years of incarceration for each of Appellant's third-degree murder convictions.

Both parties appealed to the Superior Court. Relevant here, the Commonwealth claimed that the sentencing court erred and imposed an illegal sentence by refusing to apply the sentencing enhancement set forth in Section 9715(a) of the Sentencing Code. In its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the sentencing court opined that Section 9715(a) was a recidivist sentencing statute and that Appellant was not a recidivist because, while Appellant had been convicted of three counts of criminal homicide, he had never "previously" committed criminal homicide.

(Sentencing Ct. Pa.R.A.P. 1925(a) Op., 6/19/2020, at 26-27, 29.)  The sentencing court added that it was "illogical" and "ludicrous" to apply the sentencing enhancement to Appellant under the circumstances, that the purpose of Section 9715 was "not served by engaging in grammatical chicanery," and that "the fair and proper interpretation [of Section 9715] was that it was not applicable to [Appellant's] case."  (*Id.* at 27, 29-30.)

Notably, the sentencing court rendered its decision in the face of Superior Court precedent that applied the sentencing enhancement under arguably similar circumstances.  *See Commonwealth v. Morris*, 958 A.2d 569 (Pa. Super. 2008) (en banc), *appeal denied*, 991 A.2d 311 (Pa. 2010); *Commonwealth v. Thompson*, 106 A.3d 742 (Pa. Super. 2014), *appeal denied*, 134 A.3d 56 (Pa.), *cert. denied*, 137 S.Ct. 106 (2016). In *Morris*, the defendant was charged with four counts of murder following the suspicious sudden deaths of his four children—a five-month-old daughter and an 18-month-old daughter in June of 1995, a 27-day-old son in October of 2002, and an infant son in September of 2003.  *Morris*, 958 A.2d at 572-75.  A jury convicted the defendant of two counts of third-degree murder in connection with the death of his 27-day-old son in October of 2002 and the death of his infant son in September of 2003, but it acquitted the defendant of the remaining charges.  *Id.* at 575.  The lower court sentenced the defendant to 20 to 40 years of incarceration for the third-degree murder conviction relative to the death of his 27-day-old son in October of 2002.  *Id.*  The lower court then applied the mandatory sentencing enhancement set forth in Section 9715(a) of the Sentencing Code and sentenced the defendant to a mandatory life sentence for the third-degree murder conviction relative to the death of his infant son in September of 2003.  *Id.*

Following the lower court's denial of his motion to reconsider his sentence, the defendant appealed to the Superior Court, arguing that the lower court "misconstrued and imposed an illegal sentence under [Section 9715] when it sentenced him to a mandatory

term of life in prison" for the murder of his infant son in September of 2003. *Id.* at 575, 577. Upon review, the Superior Court affirmed, concluding that, "based upon the clear language of [S]ection 9715, . . . the [lower] court did not commit legal error in using [the defendant's] first conviction for [the] murder [of his 27-day-old son in October of 2002] to enhance the sentence for [the defendant's] conviction for [the] murder [of his infant son in September of 2003], even though the two murders were tried and sentenced together" under one multiple-count criminal complaint. *Id.* at 580. In so doing, the Superior Court reasoned that "[S]ection 9715 is explicitly and unambiguously written" and "the plain language [thereof] specifies that the timing of the primary conviction is not relevant as long as the defendant had been convicted of the initial murder . . . at the time of sentencing on the second murder." *Id.* at 579. The Superior Court further reasoned:

> [S]ection 9715 only requires the [lower] court to determine, at the time of sentencing, whether the defendant previously has been convicted of murder . . . at any time, and whether this initial conviction may be used to enhance the sentence on the second conviction. The legislature did not include a requirement in [S]ection 9715 that the previous conviction must antedate the commission of the second offense for which a defendant is being sentenced or that the crimes must have been tried and sentenced separately. We note that if the legislature intended such a result, it would have inserted such language in the statute.

*Id.* at 580 (emphasis omitted) (citations omitted).[1]

---

[1] Based upon its reasoning in *Morris*, the Superior Court expressly overruled its prior decision in *Commonwealth v. Smith*, 710 A.2d 1179 (Pa. Super. 1998), *appeals denied*, 736 A.2d 603 (Pa. 1999), 737 A.2d 742 (Pa. 1999). In *Smith*, the defendant was selling marijuana on a street corner, when he became involved in a dispute with seven individuals, pulled a .380 caliber revolver, and fired five of the revolver's seven rounds, thereby injuring one of the individuals and killing two of the other individuals. *Smith*, 710 A.2d at 1181. In connection therewith, a jury convicted the defendant of, *inter alia*, two counts of third-degree murder, and the lower court sentenced the defendant to an aggregate term of 25 to 50 years of incarceration. *Id.* at 1180. The Commonwealth appealed to the Superior Court, arguing that the lower court erred by failing to apply the mandatory sentencing enhancement set forth in Section 9715(a) of the Sentencing Code.

In *Thompson*, the defendant fled the scene of an attempted traffic stop in a vehicle at a very high rate of speed, failed to stop the vehicle at a red light, and struck with his vehicle two young boys who had been crossing the street in a crosswalk, thereby killing both. *Thompson*, 106 A.3d at 748. In connection therewith, a jury convicted the defendant of, *inter alia*, two counts of third-degree murder. *Id.* Prior to sentencing, the Commonwealth filed a notice of intent to proceed under Section 9715 of the Sentencing Code. *Id.* At the time of sentencing, the lower court sentenced the defendant to 20 to 40 years of incarceration for the first count of third-degree murder and a mandatory term of life imprisonment for the second count of third-degree murder. *Id.* at 749. Following the lower court's denial of his post-sentence motion, the defendant appealed to the Superior Court, arguing that his mandatory life sentence under Section 9715 was illegal and, therefore, should have been vacated. *Id.* at 749, 759. Applying *Morris*, the Superior Court affirmed, concluding that the lower court did not commit an error of law by sentencing the defendant to life imprisonment for his second count of third-degree murder. *Id.* at 762. In reaching this conclusion, the Superior Court explained:

> [T]he [lower] court . . . sentenced [the defendant] to a mandatory term of life imprisonment for his second conviction of third-degree murder. At the time of . . . sentencing, [the defendant] had been convicted of two counts of

---

*Id.* at 1181. The Superior Court, however, found no error in the lower court's refusal to apply the sentencing enhancement under these circumstances and affirmed the lower court's order. *Id.* In so doing, the Superior Court explained:

> [The d]efendant was found guilty at the same time and by the same jury of two counts of third[-]degree murder arising out of the same incident. We believe it strains the plain meaning of the statute to interpret "previously convicted" to encompass this situation. We note that when the legislature intended such a result, it said so in plain language, as in the death penalty statute. *See* 42 Pa.[ ]C.S.[] § 9711(d)(10), (11), (12) ("[T]he defendant has been convicted of another [offense] committed either before or at the time of the offense at issue.")[.]

*Id.* (some alterations in original) (emphasis omitted).

third-degree murder. The [lower] court imposed a sentence of 20 [to] 40 years' incarceration on [the defendant's] first third-degree murder conviction. The [lower] court then sentenced [the defendant] to a mandatory term of life imprisonment for his second conviction of third-degree murder. As Section 9715 provides that the sentence of life imprisonment "shall be" imposed for a second third-degree murder conviction, the [lower] court is divested of any discretion in fashioning [the defendant's] sentence.

*Id.* at 761 (footnote omitted) (citations omitted).

Turning back to the matter *sub judice*, a three-judge panel of the Superior Court, in a nonprecedential memorandum opinion, agreed with the Commonwealth that the sentencing court erred in failing to apply the mandatory sentencing enhancement set forth in Section 9715(a) of the Sentencing Code to Appellant. *Commonwealth v. Coleman* (Pa. Super., Nos. 938, 972 WDA 2019, filed Feb. 9, 2021), slip op. at 17. In its brief analysis, the Superior Court concluded that *Morris* was dispositive of the instant matter and that Appellant's third-degree murder conviction at Count 1 of the Criminal Information constituted a prior conviction for purposes of applying Section 9715(a) when sentencing him for his convictions of third-degree murder at Counts 2 and 3 of the Criminal Information. The Superior Court, thus, vacated Appellant's judgment of sentence and remanded for resentencing in accordance with Section 9715.[2]

## II. ISSUE

We granted discretionary review to resolve the following issue, as stated by Appellant: "Should the mandatory sentencing provision of 42 Pa.[]C.S. §[]9715(a) apply to a case where the offenses and the deaths were simultaneous?" *Commonwealth v. Coleman*, 260 A.3d 923 (Pa. 2021) (per curiam). This issue presents a question of law,

---

[2] Judge Strassburger wrote a concurring memorandum, wherein he joined the majority and agreed that *Morris* controlled the applicability of Section 9715 of the Sentencing Code to the matter but expressed his belief that *Morris* was wrongly decided. *Commonwealth v. Coleman* (Pa. Super., Nos. 938, 972 WDA 2019, filed Feb. 9, 2021), concurring slip op. at 1-2 (Strassburger, J., concurring).

as it requires us to engage in statutory interpretation. *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389 (Pa. 2017). Accordingly, "our standard of review is *de novo*, and our scope of review plenary." *Id.*

### III. DISCUSSION

As in all matters of statutory interpretation, the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991, guides our analysis. The Statutory Construction Act provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the best expression of the General Assembly's intent "is found in the statute's plain language." *Commonwealth v. Howard*, 257 A.3d 1217, 1222 (Pa. 2021). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Moreover, "we should not insert words into [a statute] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012). Only in instances of ambiguous statutory language "may courts consider statutory factors to discern legislative intent." *Howard*, 257 A.3d at 1222. Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'" *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

Section 9715 of the Sentencing Code, entitled life imprisonment for homicide, more fully provides, in part:

(a) Mandatory life imprisonment.--Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), *any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder* or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction *shall be sentenced to life imprisonment*, notwithstanding any other provision of this title or other statute to the contrary.

(b) Proof at sentencing.--Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. *The applicability of this section shall be determined at sentencing.* The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

(Emphasis added.)

Appellant contends that Section 9715 of the Sentencing Code should not be construed to apply to a case such as this one, where a single course of conduct caused multiple, instantaneous, simultaneous deaths and the convictions at issue were "at most" minutes apart. (Appellant's Brief at 21.) As for the language used in Section 9715(a), and specifically the phrase "has previously been convicted," Appellant argues that the

term "'previous[,'] in its everyday use, implies an event *other than* that under consideration." (*Id.* at 24 (emphasis in original).) Appellant also argues that Section 9715(b)'s language relating to proof at sentencing and providing that "[t]he sentencing court . . . shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender" refutes the Commonwealth's interpretation of the statute. Appellant adds that the Commonwealth's interpretation "would condone a gross disparity: treating a single criminal episode as if it were repeat criminal episodes, based on happenstance." (*Id.* at 25.) In further support of his interpretation, Appellant relies upon the rule of lenity and notes that the General Assembly is presumed not to have intended an absurd result or to have intended to violate the constitutional protections against cruel and unusual punishment and unequal treatment under the law.

Appellant recognizes that not all enhanced sentencing statutes applicable to second and subsequent offenses are "construed as applying only to recidivists." (*Id.* at 21.) Nonetheless, Appellant argues that he is neither a recidivist nor a repeater (*i.e.*, an individual who has committed the same crimes separated by time but not by a period of rehabilitation) and submits that "[i]n no case decided by [this] Court has a statute enhancing punishment been applied to simultaneous offenses." (*Id.* at 21-22, 24-25.) Appellant contends that the sentencing court properly construed Section 9715(a) and recognized that "*Smith* is the more rational interpretation of the statute" under the facts of the instant matter. (*Id.* at 21.) Indeed, according to Appellant, "the Superior Court got it right in *Smith* and got it wrong in *Morris* and *Thompson*."[3] (*Id.*)

---

[3] The Defender Association of Philadelphia (Association) filed an *amicus curiae* brief on behalf of Appellant, agreeing with Appellant that *Morris* was incorrectly decided and that Section 9715 of the Sentencing Code is inapplicable herein. The Association first argues that, based upon Section 9715's text, a defendant must have previously been convicted

The Commonwealth counters that Section 9715 of the Sentencing Code applies in cases involving simultaneous deaths and offenses resulting from a single criminal act. Turning to principles of statutory construction and Section 9715(a)'s use of the phrase "previously been convicted at any time," the Commonwealth argues that "previously been convicted" is a phrase consisting of ordinary words and "clearly refers to convictions antecedent to some point in time." (Commonwealth's Brief at 6.) As for the phrase "at any time," the Commonwealth argues that the phrase should be interpreted literally, meaning that "there is no previous conviction too remote, *nor too recent*, to be exempt from the rule." (*Id.* at 9 (emphasis in original).) The Commonwealth further submits that, pursuant to Section 9715(b), sentencing is the operative "look-back point." (*Id.* at 7.) Thus, according to the Commonwealth, the statute requires the sentencing court to look at the record at sentencing and, if there are multiple convictions for third-degree murder, sentence a defendant to life imprisonment for all but the first of such convictions. The Commonwealth submits that the statutory text expressly allows for situations like the one present here when read as a whole and that "[a]ny other approach disregards the express text of the statute." (*Id.* at 9.) The Commonwealth adds that we should reject Appellant's

of murder at the point in time that he is convicted of the third-degree murder subject to the Section 9715 enhancement—not at the point in time that the defendant is sentenced for the latter offense—and that circumstance did not happen here because Appellant's convictions were rendered at the same trial (*i.e.*, according to the Association, simultaneously). Second, the Association contends that the "recidivist philosophy" should apply here to require that the previous murder conviction exist at the time of commission of the third-degree murder offense subject to the Section 9715 enhancement. Third, the Association argues that Section 9715, as a penal statute, must be strictly construed in favor of Appellant. Finally, the Association argues that, even if *Morris* was correctly decided and Appellant's conduct is encompassed "within the literal terms of Section 9715, the absolute simultaneity and indivisibility of [A]ppellant's criminal act resulting in the three third-degree murder convictions renders application of Section 9715 unreasonable and no longer in effectuation of legislative intent. In such circumstances, Section 9715 . . . should not be applied." (Association's Brief at 22.)

and the Association's position insofar as they seek to insert language into Section 9715(a) that is not otherwise there or ignore language that is contained in Section 9715(b).

The Commonwealth further argues that Section 9715 is not a recidivist sentencing statute, as "[o]ur General Assembly knows how to write a recidivist statute if it wants to." (*Id.* at 10.) The Commonwealth adds that Section 9715 is silent as to acts; rather the section focuses on the existence of multiple convictions—not multiple acts—making no distinction between convictions stemming from simultaneous murders committed in a single act and convictions for previous unrelated acts. The Commonwealth claims that this interpretation comports with *Morris*'s interpretation of Section 9715 and submits that the Superior Court decided *Morris* and *Thompson* correctly. The Commonwealth contends that, while Appellant laments the application of Section 9715 to him under the circumstances as disparate and absurd, "[t]he fact that there were three victims in the Ford[] instead of only one[] entitles [A]ppellant to no leniency," as "the defendant in a criminal case takes his victims as he finds them." (*Id.* at 17.) As a final point, the Commonwealth argues that the statute is not ambiguous, and, thus, the rule of lenity does not apply.

Upon review, we hold that Section 9715 of the Sentencing Code applies under the circumstances presented. Section 9715(a) plainly provides that any person convicted of third-degree murder in this Commonwealth "who has previously been convicted at any time of murder" must receive an enhanced sentence. The statute does not define any of the terms in this operative phrase. Giving the most pertinent terms their plain and ordinary meaning,[4] the term "previously" is defined as "beforehand, hitherto, antecedently," and

---

[4] It is well settled that "[o]ne way to ascertain the plain meaning and ordinary usage of terms is by reference to a dictionary definition." *In re Beyer*, 115 A.3d 835, 839 (Pa. 2015) (citing *Commonwealth v. Hart*, 28 A.3d 898, 909 (Pa. 2011) (explaining that "common and approved usage [of term undefined by legislature] may be ascertained by examining its dictionary definition")).

the term "previous" is defined as "going or existing before in time." Webster's Third New International Dictionary 1798 (3d ed. 1993). The word "convicted" or "convict" means "to find or declare guilty of an offense or crime by the verdict or decision of a court or other authority." *Id.* at 499; *see also* Black's Law Dictionary 421-22 (11th ed. 2019) (defining "convict" as "[t]o prove or officially announce (a criminal defendant) to be guilty of a crime after proceedings in a law court; specif., to find (a person) guilty of a criminal offense upon a criminal trial, a plea of guilty, or a plea of nolo contendere (no contest)"). In view of these definitions, the first portion of the key phrase in Section 9715(a) (*i.e.*, "who has previously been convicted") dictates that the sentencing enhancement applies to any person convicted of third-degree murder who has been found or proven guilty of murder before in time.[5]

Focusing only on this first portion of the phrase set forth above, the phrase does not address whether the previous conviction must be one rendered in a separate case or whether it may also be applied in cases such as this. Any doubt arising as to the application of Section 9715(a) of the Sentencing Code, however, is removed upon continued reading of the statute: any person convicted of third-degree murder who has

---

[5] In her concurring opinion, Justice Donohue observes that the term "conviction" has been the subject of competing definitions harkening back to the Civil War era. *See* Donohue, J., Concurring Opinion at 2-3. We acknowledge the concurrence's point that the courts have, at various times, utilized differing definitions of the term when the term has been undefined by statute. These cases, however, appear to demonstrate that both definitions—*i.e.*, "found guilty" and "found guilty and sentenced"—have been used with such frequency that they call into question whether a "technical" definition of "conviction" clearly remains, particularly given the passage of time. Nevertheless, Justice Donohue's concurring opinion demonstrates that, regardless of whether the analysis focuses on historical understandings of the term or modern dictionary definitions of the term, "conviction" for purposes of Section 9715 of the Sentencing Code simply means "finding of guilt," without any additional requirement that a judgment of sentence has been imposed upon the defendant relative to that finding.

previously been convicted of murder "at any time" is to receive an enhanced sentence. Indeed, through use of the terms "at any time," the General Assembly made clear that there is no limitation relative to a person's previous conviction that would preclude application of the sentencing enhancement insofar as it concerns Section 9715(a). Thus, pursuant to Section 9715(a), so long as a person convicted of third-degree murder has previously been convicted of murder at any point in time, the sentencing enhancement applies to that person.[6]

In light of the clear and unambiguous language employed in Section 9715(a) of the Sentencing Code, Appellant's arguments fail. While Appellant argues that Section 9715 should not apply where a single course of conduct caused multiple instantaneous, simultaneous deaths, we emphasize that the General Assembly spoke only in terms of convictions and, more specifically, whether the defendant "convicted" of third-degree murder "has previously been convicted at any time of murder." Appellant's attempts to

---

[6] The dissent finds redundancy and ambiguity in Section 9715(a) of the Sentencing Code based upon the provision's use of the phrase "previously . . . at any time." In so doing, the dissent opines that this language serves as the basis for three different options as to the statute's applicability. (*See* Wecht, J., Dissenting Opinion at 10-11 (reasoning that, through use of phrases "previously" and "at any time," General Assembly could have also intended to require previous conviction to arise in "entirely separate case" or to preclude claim of prior conviction being "too remote").) Consistent with our analysis above, we do not agree that the words "previously" and "at any time"—terms that the dissent acknowledges are "not at all challenging" to understand, (*id.* at 3)—are redundant or ambiguous as used together in Section 9715(a). Rather, those terms are crucial to ascertaining the plain meaning of the statute, and they clearly identify the person to which the sentencing enhancement applies. As explained above, the term "previously" indicates that a person convicted of third-degree murder must already have a conviction for murder, and the phrase "at any time" makes clear that there is no limitation placed upon that previous conviction otherwise in Section 9715(a). Stated another way, under Section 9715(a), the sentencing enhancement applies to any person convicted of third-degree murder who has ever before been convicted of murder. This language encompasses all of the scenarios envisioned by the dissent, which unnecessarily complicates the analysis by creating ambiguity in the statute where none exists.

shift the focus of the analysis to his particular conduct or circumstances are not supported by the text of Section 9715. Indeed, Section 9714 of the Sentencing Code (relating to sentences for second and subsequent offenses)—the sentencing enhancement provision that immediately precedes Section 9715—supports our analysis. Specifically, Section 9714(a)(1) provides:

> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, *if at the time of the commission of the current offense* the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

42 Pa. C.S. § 9714(a)(1) (emphasis added). Whereas application of the sentencing enhancement in Section 9714 turns on whether a person has previously been convicted "at the time of the commission of the current offense," application of the sentencing enhancement in Section 9715 turns on whether a person has previously been convicted "at any time." In addition to this significant difference in language employed by the General Assembly, Section 9715 provides that the sentencing enhancement applies "notwithstanding any other . . . statute to the contrary," including "the provisions of [S]ection . . . 9714." 42 Pa.C.S. § 9715(a). This difference in statutory text combined with Section 9715(a)'s directive that Section 9715 applies notwithstanding any other statute to the contrary, again evidences a clear and deliberate choice on the part of the General Assembly—*i.e.*, to prescribe a specific enhancement of life imprisonment to "any person convicted of murder of the third degree . . . who has previously been convicted at any time of murder" or other qualifying offense.

Additionally, we rejected a similar argument to Appellant's in *Commonwealth v. Vasquez*, 753 A.2d 807 (Pa. 2000). In that case, "Eddie Vasquez (Vasquez) was arrested

and charged with delivering cocaine to an undercover officer on a number of occasions." *Id.* at 808. A single criminal information was filed against him, and he pleaded guilty at a single guilty plea hearing to two counts of delivering cocaine "related to separate drug transactions." *Id.* On the second drug trafficking count, the trial court sentenced Vasquez to three to six years of imprisonment pursuant to Section 7508(a)(3)(i) of the Crimes Code, 18 Pa. C.S. § 7508(a)(3)(i) (providing that "if at the time of sentencing the defendant has been convicted of another drug trafficking offense," defendant shall be sentenced to mandatory minimum term of "three years in prison and [a] $10,000 [fine] or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity").[7] In this Court, Vasquez argued Section 7508 should not have been applied to him. In particular, he "seem[ed] vaguely to imply that [his] two drug offenses [we]re part of a single criminal episode and thus [could not] be considered separate convictions for purposes of the enhancement statute." *Id.* at 809. This Court rejected Vasquez's argument, reasoning:

> His drug transactions were distinct in time, occurring ten days apart and requiring separate planning and execution. There is no evidence in the record before us that the transactions were contingent upon each other. They should not be treated as a single criminal act simply because the transactions involved sales to the same undercover officer. Thus, the facts properly support the conclusion that we are confronted with two convictions for two separate crimes, although contained within one indictment and one arrest. *Moreover, even if we were to conclude that these transactions could be construed as a single criminal episode, the statute at issue specifically focuses on a defendant's prior "convictions" at the time of sentencing, and makes no distinction between convictions that arise from a multiple count complaint, or a separate complaint.* We are bound by the unambiguous language of the statute and cannot read language into it that simply does not appear. 1 Pa.[]C.S.[] § 1921(b). The wording of the statute is unambiguous, and clearly requires that as long as *at the time of sentencing,*

---

[7] This Court subsequently held Section 7508 of the Crimes Code was unconstitutional under *Alleyne v. United States*, 570 U.S. 99 (2013). *See Commonweatlh v. DiMatteo*, 177 A.3d 182, 191 (Pa. 2018).

a defendant "has been convicted" of another qualifying "offense," the defendant shall receive the enhanced sentence.

*Id.* (first emphasis added).

Similar to Section 7508(a)(3)(i) of the Crimes Code, Section 9715(a) of the Sentencing Code plainly focuses upon whether a person convicted of third-degree murder "has previously been convicted at any time of murder." Further, turning to Section 9715(b) of the Sentencing Code, that provision is also plain in providing that, again like Section 7508(a)(3)(i) of the Crimes Code, the applicability of Section 9715—*i.e.*, the mandatory sentencing enhancement of life imprisonment—"shall be determined at sentencing." Thus, as we recognized in *Vasquez*, we again observe that, when a mandatory sentencing statute is unambiguously predicated on a prior conviction at sentencing, it is legally irrelevant whether this previous conviction arose from the same or different criminal conduct.

Proceeding to the additional language in Section 9715(b) of the Sentencing Code relating to the record of a defendant's previous conviction(s) and Appellant's reliance thereon to argue that the statute precludes application of the sentencing enhancement to the scenario presented in this case, we note the following. Section 9715(b)'s proof provisions merely require a complete record of an individual's previous convictions, including but not limited to those outside of the particular case at hand. In referencing an individual's "previous convictions," Section 9715(b) is consistent with Section 9715(a) and similarly unambiguous in referring to previous findings of guilt. *See Deal v. United States*, 508 U.S. 129, 130-32, 133 n.1, 137 (1993) (holding that term "conviction" as used in federal enhanced sentencing statute unambiguously meant "finding of guilt" and that district court did not err in enhancing defendant's sentence on second through sixth convictions rendered in single proceeding, as those five convictions were "second or subsequent conviction[s]" to defendant's first conviction rendered in same proceeding).

In instances such as this one, the sentencing court clearly has the complete record of the relevant convictions, or findings of guilt, as those convictions have occurred in the very case before the sentencing court. Put simply, Section 9715(b) establishes the process through which a sentencing court assesses whether the sentence enhancement is applicable and allows a convicted individual to challenge the accuracy of the record of conviction(s) relied upon for imposition of the enhancement. While the provisions pertaining to challenges to the accuracy of the record are unlikely to be utilized where the convictions all stem from the same proceeding, this circumstance does not render our above reasoning infirm. This is because the language in Section 9715(b) accounts for a broad range of circumstances, including those involving individuals whose qualifying convictions were not rendered in the same proceeding. Those requirements do not, as Appellant argues, demonstrate that the sentencing enhancement is inapplicable to individuals such as Appellant, whose offenses occurred simultaneously.

Moreover, the proof requirements in Section 9715(b) of the Sentencing Code do not inject ambiguity into the statute, as the dissent opines. The dissent suggests that there cannot be a "complete record" of a person's "previous convictions" pursuant to Section 9715(b) when the previous conviction is one among a set upon which the sentencing court is imposing a consolidated judgment of sentence. The dissent posits that the statute requires the record to include a judgment of sentence at the least,[8] if not

_____

[8] The dissent's analysis of Section 9715(b) of the Sentencing Code is yet another effort to manufacture ambiguity in Section 9715, which the dissent ultimately resolves in a manner that contravenes the statute's plain and unambiguous language. Indeed, insofar as the dissent posits that Section 9715(b) requires the imposition of a judgment of sentence in order for there to be a "complete record" of a person's "previous convictions," such interpretation would render the word "convicted" as used in Section 9715(a) and other uses of the term "conviction" in Section 9715(b) nonsensical or would require those terms to mean something different. *See* 42 Pa. C.S. § 9715(a) (providing that "any person *convicted* of murder of the third degree . . . who has previously been *convicted* at any

also every document generated in the case such that the record is akin to that provided for appellate review. Section 9715(b), however, plainly dictates that the sentencing court must have a "complete record *of the previous convictions*" of the offender. 42 Pa. C.S. § 9715(b) (emphasis added). Again, consistent with Section 9715(a)'s reference to a person who has "previously been convicted," Section 9715(b)'s requirement that a court have a "complete record" of a person's "previous convictions" is similarly plain in referring to a finding of guilt. Not only are findings of guilt on several counts "[u]nlike a judgment on several counts, [in that] findings of guilt on several counts are necessarily arrived at successively in time," *Deal*, 508 U.S. at 133 n.1, but also, such findings would clearly be contained in the record before the sentencing court.[9]

---

time of murder . . . shall be *sentenced* to life imprisonment" (emphasis added)); 42 Pa. C.S. § 9715(b) ("Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to *conviction*, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after *conviction* and before *sentencing*" (emphasis added)). Thus, the dissent's interpretation would yield an absurd result. As such, we do not interpret Section 9715(b)'s reference to a "complete record" of a person's "previous convictions" as an ambiguity evidencing the General Assembly's intent to limit instances in which the sentencing enhancement is to apply, particularly given that such a limit is not supported by the plain language of Section 9715(a). Instead, we read both Section 9715(a) and (b) to evidence a clear intent on behalf of the General Assembly to enhance the sentence of any person found guilty of third-degree murder who has previously been found guilty of murder, with that determination to be made at sentencing and proof of the previous finding of guilt to be required at that time. 42 Pa. C.S. § 9715(a)-(b).

[9] Insofar as the dissent criticizes our interpretation of the phrase "complete record of the previous convictions" as unprecedented, it appears this Court has indeed never been called upon to interpret the meaning of this precise phrase as used in Section 9715(b) or any other statutory provision. This Court has, however, explained that "[t]he existence of a prior conviction is a simple historical fact which may be ascertained through official documents." *Commonwealth v. Allen*, 494 A.2d 1067, 1071 (Pa. 1985). Our interpretation herein takes into consideration the specific context in which the phrase and the language surrounding the phrase.

Additionally, insofar as Appellant or the Association requests that we interpret the statutory language in Appellant's favor pursuant to the rule of lenity or the "recidivist philosophy,"[10] we decline to do so. "[U]nder the rule of lenity, penal statutes are to be strictly construed, with ambiguities resolved in favor of the accused." *Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015). "The need for strict construction . . . does not require that the words of a penal statute be given their narrowest meaning or that legislative intent be disregarded." *Commonwealth v. Brown*, 981 A.2d 893, 898 (Pa. 2009). Similarly, consideration of "the 'recidivist philosophy' . . . is a valid tool in interpreting ambiguous statutory language." *Commonwealth v. Williams*, 652 A.2d 283, 284-85 (Pa. 1994). Nonetheless, "[i]f the legislature enacts a statute which clearly expresses a different application, the 'recidivist philosophy' possesses no authority which would override clearly contrary statutory language." *Id.* at 285 (rejecting challenge to Section 7508(a)(3)(i) of Crimes Code premised upon "recidivist philosophy" and noting that General Assembly is "free to reject or replace" philosophy through enactment of legislation "clearly express[ing] a different application"); *see also Commonwealth v. Jarowecki*, 985 A.2d 955, 961-62 (Pa. 2009) ("'[T]he recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate,' and the legislature is free to enact a statute 'which clearly expresses a different application.'" (quoting *Commonwealth v. Shiffler*, 879 A.2d 185, 196 (Pa. 2005))). Section 9715 of the Sentencing Code is unambiguous and, therefore, leaves no room for application of the rule of lenity and the "recidivist philosophy" to the benefit of Appellant.

---

[10] The "recidivist philosophy" represents the view that the "point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." *Commonwealth v. Williams*, 652 A.2d 283, 284 (Pa. 1994) (internal quotation marks omitted) (quoting *Commonwealth v. Dickerson*, 621 A.2d 990, 992 (Pa. 1993)).

Moreover, as explained in *Williams*, sentencing serves many purposes, including "protection of society, general deterrence (example to others), individual deterrence, rehabilitation, and retribution (punishment, vengeance, desserts)." *Williams*, 652 A.2d at 285 n.1. Given the many purposes for sentencing, we also disagree with Appellant that application of the sentencing enhancement to him is unreasonable or absurd. Notwithstanding any perceived disparity in the application of the sentencing enhancement to Appellant under the circumstances presented, Appellant stands convicted of three counts of third-degree murder for his killing of Bianco, Meininger, and Child. It is within the General Assembly's prerogative to determine which goals to prioritize in enacting statutes to enhance the sentence of particular individuals, such as those with multiple murder convictions. *See, e.g.*, *id.* (explaining that "[t]he legislature is perfectly free to enact a sentencing scheme which rejects the 'recidivist philosophy' and focuses on other goals of the penal system").[11] Had the General Assembly intended to enact Section 9715 of the Sentencing Code in accordance with the recidivist philosophy, it could have used different language to effectuate that intent.

In sum, reading Section 9715 of the Sentencing Code as a whole as we must, we conclude that the mandatory sentencing enhancement set forth therein plainly applies to a person convicted of third-degree murder who has previously been convicted at any time of murder or other qualifying offense, as determined by the sentencing court at sentencing on the third-degree murder conviction. This plain and unambiguous language

---

[11] Insofar as Appellant supports his position by arguing that the General Assembly is presumed not to have intended to violate the constitutional protections against cruel and unusual punishment and unequal treatment under the law, Appellant has failed to put forth a developed argument that the sentencing enhancement's applicability to the factual circumstances herein constitutes cruel and unusual punishment or an equal protection violation. As such, we decline to address any such claim and reject Appellant's argument in this regard.

encompasses instances in which a person engages in a single criminal act resulting in multiple simultaneous deaths, so long as the express terms of Section 9715 are met. Here, while Appellant murdered three people simultaneously during his high-speed chase with police, Appellant was convicted of three counts of third-degree murder in *seriatim* fashion, a point Appellant does not dispute.[12] As such, the Superior Court did not err in holding that the sentencing enhancement applied to Appellant for his third-degree murder convictions at Counts 2 and 3 of the Criminal Information, as Appellant was "a person convicted of third-degree murder who has previously been convicted at any time of murder" as determined at the time of sentencing on those convictions. Accordingly, we affirm the order of the Superior Court.

Chief Justice Todd and Justices Dougherty and Mundy join the opinion.

Justice Donohue files a concurring opinion.

Justice Wecht files a dissenting opinion.

The Late Chief Justice Baer did not participate in the decision of this matter.

---

[12] To be clear, we disagree with the Association's position, as it specifically relates to interpretation of Section 9715 of the Sentencing Code, that Appellant's convictions were simultaneous because they were rendered at the same trial. The Association itself acknowledges that the word "convicted" in Section 9715 refers to a finding of guilt. (*See* Association's Brief at 15.) As noted, "findings of guilt on several counts are necessarily arrived at successively in time." *Deal*, 508 U.S. at 133 n.1. Section 9715 provides no indication that convictions rendered in a single trial cannot be considered previous to each other. If the General Assembly wishes to change how the sentencing enhancement set forth in Section 9715 is to be applied, its recourse is to amend the statute. *See United States v. Davis*, 139 S.Ct. 2319, 2324 n.1 (2019) (recognizing that, decades after *Deal*, Congress amended federal enhanced sentencing statute at issue such that enhancement became applicable "after a prior conviction . . . has become final" (quoting First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5221)).